NEWMAN, Circuit Judge,
dissenting.
The Department of Veterans Affairs relied on a plainly incorrect autopsy diagnosis to deny Mrs. Bonner the Dependency and Indemnity Compensation benefits to which she is entitled. From the panel majority’s denial of these benefits and refusal to correct the concededly incorrect cause of death, I respectfully dissent.
Admiral Emmett Peyton Bonner was a Naval officer who graduated from the United States Naval Academy in 1939. His naval career included service in World War II, Korea, and Vietnam. While in the service he was exposed to radiation during atmospheric nuclear testing in the South Pacific in 1958, and may have been exposed to Agent Orange in Vietnam. He retired at the age of 54 and died of cancer three years later.
Admiral Bonner’s wife, the appellant, applied for Dependency and Indemnity Compensation, listing the cause of death as “cancer.” An autopsy performed at the time of death by the National Naval Medical Center (NNMC) listed the cause of death as Hodgkin’s Disease. Mrs. Bonner’s claim was initially denied as not being service connected, since neither Hodgkin’s Disease nor other forms of lymphoma (Non-Hodgkin’s Lymphoma or NHL) were presumptively service connected.
The National Institutes of Health subsequently reviewed the autopsy report and a group of slides that the government had preserved. The conclusion was that the original diagnosis of Hodgkin’s Disease was incorrect, and that Admiral Bonner died of Non-Hodgkin’s Lymphoma. It is not disputed that the second diagnosis is the correct one.
The panel majority, while asserting that the cause of death is a factual matter not open to our review, speculates about the meaning and accuracy of the two autopsy reports. Thus the court proposes that the 1975 diagnosis of Hodgkin’s Disease as the cause of death may have been correct. The majority’s preference for the 1975 diagnosis of Hodgkin’s Disease is contrary to NIH’s undisputed conclusion that the autopsy “favors” non-Hodgkin’s lymphoma, and that the earlier diagnosis was incorrect. For example, the 1995 NIH report states that “although the infiltrate contains cells which resemble Reed-Sternberg cells and variants, the infiltrate lacks the usual inflammatory background of Hodgkin’s disease. Immunohistochemical studies favor the diagnosis of non-Hodgkin’s lymphoma.” Reed-Sternberg cells, and the “usual inflammatory background” found to be absent, are mandatory elements of Hodgkin’s disease. See Ramzi S. Cotran, et al. Robbins Pathologic Basis of Disease 5th ed.2001, App. at 96-116. The NIH report concludes with the following paragraphs:
The patient was a 57 year old white male diagnosed as lymphocyte-depleted Hodgkin’s disease in January 1975 and treated with combined chemotherapy and radiation, who died 8/1/75. At autopsy he was found to have extensive nodal and hepatic involvement by lymphoma, initially interpreted as consistent *1330 with Hodgkin’s disease. The major pathological question addressed to us was whether, in light of current concepts, the tumor would be reclassified as a non-Hodgkin’s lymphoma.
Microscopic examination of the lymph nodes and liver nodules show massive involvement by malignant lymphoid cells. The malignant cells are large, pleomorphic cells, with prominent nucleoli, some of which resemble Reed-Sternberg cells and variants. However, the background infiltrate is sparse and composed of small, mature lymphocytes. It lacks the normal mixed inflammatory background of Hodgkin’s disease as well. The malignant cells are histologi-cally identical in appearance to those seen in the biopsies of the abdominal mass (dated 2/6/75) and axillary lymph node (dated 4/3/75). Immunoperoxidase stains were performed on paraffin sections of the submitted surgical material and favor the diagnosis of non-Hodgkin’s lymphoma. (See attached surgical pathology, report NIH # S95-5688)
T-cell rich B-cell lymphomas simulating Hodgkin’s disease have been well described, and represent a 4-5% misdiagnosis of Hodgkin’s disease. Indeed, a review of originally classified lymphocyte-depleted Hodgkin’s disease cases at the National Cancer Institute revealed 26% with a high-grade non-Hodgkin’s lymphoma, the majority of those cases were further classified as diffuse, large cell, immunoblastic type lymphomas.
The NIH report concluded that Admiral Bonner died of non-Hodgkin’s lymphoma, and the Board of Veterans Appeals agreed. See Appeal of Elizabeth Bonner, No. 96-85144 (BVA Sept. 27, 2001) at 8 (setting forth the finding of fact that “the RO received evidence from the National Institutes of Health (NIH) indicating that the diagnosis of Hodgkin’s disease made in the veteran’s case in 1975 was in error and that the veteran had actually died of non-Hodgkin’s lymphoma (NHL).”) No contradiction to that finding is mentioned by the Board, or by the Veterans Court.
My concern is not that the Regional Office initially arrived at an incorrect cause of death based on an incorrect autopsy report. My concern is that the Board refused to change its ruling despite accepting the new and unchallenged information in the NIH autopsy report, leaving the plainly incorrect diagnosis unrepealed and thereby denying the widow her entitlement.
Nonetheless, the DVA has refused to correct the error in Admiral Bonner’s records, thereby reducing the statutory benefits available to Mrs. Bonner. By statutory enactment after the Viet Nam war, Congress established the presumption that deaths from both Hodgkin’s Disease and Non-Hodgkin’s Lymphoma are service connected, but placed different retroactive effects on these determinations. Thus a veteran who died of Non-Hodgkin’s Lymphoma entitles his widow to compensation retroactive to 1964; that is, the claim benefits from the presumption of service connection, even if the claim had been denied before the statutory and regulatory provisions were enacted. However, compensation for Hodgkin’s Disease is awarded only for the period after the law was enacted and only for a year before the claim is filed. (The difference appears to relate to Agent Orange exposure in Viet Nam). Thus, whether Admiral Bonner died of Hodgkin’s Disease or Non-Hodgkin’s Lymphoma determines whether Mrs. Bonner receives compensation from 1994 or from 1975.
*1331 Mrs. Bonner filed another request for compensation in 1995, requesting compensation from the filing of her original claim in 1975. The VA, applying the rules for Hodgkin’s Disease based on the original autopsy, awarded compensation from 1994. The Regional Office refused to change the diagnosis despite the corrected autopsy report. The Board of Veterans Appeals remarked that the two autopsies reached different conclusions, but held that since the claim as originally filed was for Hodgkin’s Disease, Mrs. Bonner could not receive the retroactive benefit of the Non-Hodgkin’s statute and regulations. On appeal, the Court of Appeals for Veterans Claims ruled that the cause of death was Hodgkin’s Disease since the Regional Office had made that determination and the BVA had not disturbed it.
The claim as initially filed by Mrs. Bonner named “cancer” as the cause of death. It is not disputed that both Hodgkin’s Disease and Non-Hodgkin’s Lymphoma are forms of cancer. However, the Veterans Court affirmed the BVA ruling that the initial claim for “cancer” was really a claim based on Hodgkin’s Disease because the evidence initially presented to the Regional Office stated that diagnosis. The Veterans Court refused to consider the second autopsy report.
Neither Mrs. Bonner nor the VA can be charged with prior knowledge that the original autopsy report was incorrect. The proper procedure is to correct the veteran’s records in accordance with the correct autopsy report. It is not an unre-viewable factual question of whether the VA is required to recognize an undisputed error in the veteran’s records, and to apply the correct cause of death to survivors’ claims. Upon such recognition, Mrs. Bonner’s claim would be subject to determination on the correct grounds, whether or not she used the buzz-words “clear and unmistakable error (CUE)” in her petition (as the government argues). The obligatory veteran-friendly position of the law governing veterans’ claims negates this hyper-technical reason whereby the Veterans Court refused to consider the merits of Mrs. Bonner’s claim. From my colleagues’ acceptance of this reasoning, I respectfully dissent.